UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOHN RAYMOND AST,

       Petitioner,

v.               9:21-CV-0567
                 (LEK/TWD)
STANLEY LOVETT, Warden of Ray Brook,

       Respondent.

---

APPEARANCES:           OF COUNSEL:

JOHN RAYMOND AST
52799-066
Petitioner, pro se
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. CARLA B. FREEDMAN      RANSOM P. REYNOLDS, III,
                     ESQ.
Acting United States Attorney for the   Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

THÉRÈSE WILEY DANCKS
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

I.   **INTRODUCTION**

  Petitioner John Ast seeks federal habeas corpus relief pursuant to 28 U.S.C. §2241.

Dkt. No. 1, Petition ("Pet."). Respondent opposed the petition. Dkt. No. 11, Response; Dkt.

No. 13, Amended Response. Petitioner filed a reply. Dkt. No. 17, Traverse.

  Petitioner also filed a motion for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c). Dkt. No. 19, Motion. Respondent opposed the motion. Dkt. No. 21, Response in Opposition. Petitioner filed a reply. Dkt. No. 22, Reply.

## II.     PETITION

Petitioner claims that while he was at FCI-Fort Dix, New Jersey, he was wrongly deprived of *inter alia* forty-one days of good time credits ("GTC") which were forfeited as the result of two unlawful disciplinary reports and an unconstitutional disciplinary hearing. Pet. at 1, 10-22; Ex. at 2-4 (challenged incident report, dated August 12, 2019), 7, 11-15 (discipline hearing officer report for challenged incident, No. 3290461, occurring on August 12, 2019), 56-60 (same). Petitioner exhausted his administrative remedies. Pet. at 2-3, 4-7, 22-25; Ex. 16-34, 38-45, 50. Ultimately, his appeal was denied. Pet. at 2, 6-7, 22-23; Ex. 35-37, 46-49.

Petitioner contends that he is entitled to federal habeas corpus relief because his due process rights were violated during his disciplinary hearings. Pet. at 1. Petitioner requested (1) reinstatement of his GTC; (2) expungement of his disciplinary record; (3) restoration of his custody security classification to "Low"; and (4) placement at the federal correctional institute in Fort Dix, New Jersey. *Id.* at 8.

Respondent initially argued that the instant petition should be dismissed as moot because the BOP reexamined petitioner's disciplinary hearing and sanction, reversed the disposition, expunged the disciplinary charge from petitioner's record, and restored petitioner's GTC. Dkt. No. 11 at 1-2; Dkt. No. 13 at 1-2; Dkt. No. 11-1 at 1, Higgins Declaration ("Higgins Decl."), ¶ 5; Dkt. No. 11-1 at 9-14 (copy of petitioner's disciplinary record demonstrating no reflection of Incident Report No. 3290461 from August 12, 2019 – the challenged disciplinary disposition). Petitioner's security classification was also re-examined and his classification was returned to "Low." Higgins Decl. ¶ 8.

Petitioner's Traverse conceded that the BOP had expunged the contested disciplinary report from his reports, returned his GTC, and changed his security classification. Traverse at 1. However, petitioner argued that he failed to receive all the relief which he requested, namely being transferred to the placement where he was supposed to go prior to the contested disciplinary disposition. *Id.* at 1-3. The disposition, which led to a higher security classification, prevented petitioner from being transferred to Fort Dix. *Id.* Accordingly, petitioner still seeks transfer to New Jersey to be rendered whole as a result of all the consequences which flowed from the contested disciplinary report. *Id.* at 3.

Petitioner contends that he attempted to facilitate the transfer on his own. Traverse at 6. Petitioner's request was allegedly denied as the result of the COVID-19 pandemic. *Id.* at 6, 8, 17-18. Petitioner has since been vaccinated for COVID-19 and demonstrates that Fort Dix has the capacity to house far more inmates than its current capacity. *Id.* at 8-9, 37-38. The transfer would be essential to allowing petitioner to enroll in a Residential Drug Abuse Program and work in Fort Dix's Institutional factory to help him continue making his restitution payments on time. *Id.* at 6, 8, 21-22. Further, Fort Dix offers free college program assistance and other educational courses to help improve petitioner's educational pursuits, as well as offering an on-site medical doctor for a health condition that petitioner has which requires surgery. *Id.* at 6, 24-27. Finally, Fort Dix is close enough for petitioner's family to be able to visit him. *Id.* at 6, 28.

### III.    MOTION FOR JUDGMENT ON THE PLEADINGS

Petitioner filed a motion seeking the Court compel judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 19 at 1; *see also id.* at 5-6 (illustrating

increase in inmate population from September of 2021 to December of 2021). Petitioner's motion includes information "to certify that (BOP) inmates have been currently transferred to . . . Fort Dix, New Jersey . . . [showing] a (382) inmate population increase . . . since the petitioner's reply . . . establishing . . . that the (DSCC)(BOP) is without a doubt conducting inter institution inmate transfers to . . . Fort Dix, New Jersey." *Id.* at 1-2. Accordingly, petitioner requests this Court enter judgment in his favor and facilitate his transfer from Ray Brook to Fort Dix.

Respondent opposes the motion. Dkt. No. 21. Specifically, respondent argues that the BOP retains exclusive discretion over inmate classification and movement; therefore, no due process interest is at issue. *Id.* at 3-11.

Petitioner filed a reply, indicating that Ray Brook's inability to address his medical conditions constitutes an atypical and significant hardship. Dkt. No. 22 at 1. Petitioner cites to his chronic medical conditions and pre-hypertensive history, in addition to the constant threat of contracting COVID-19, to demonstrate how his liberty interests have been deprived. *Id.* at 2-5. Because Ray Brook is lacking the resident doctors that Fort Dix has on staff, petitioner is precluded from receiving certain immediate medical attention, including a scheduled surgery on his hand. *Id.* at 5-6; *see also id.* at 83-84, 88, 91-94. Petitioner's continued incarceration at Ray Brook means that he needs to wait for an outside specialist appointment to address his hand, whereas if he were at Fort Dix the problem could be handled in-house. *Id.* at 6. Moreover, petitioner claims that his high blood pressure issues were misdiagnosed by Ray Brook's medical staff. *Id.* at 8.

Petitioner also complains about inadequate dental and vision treatment. Dkt. No. 22 at 6-7; *see also id.* at 82, 85, 90. Further, petitioner has been denied special orthopedic

4

shoes. *Id.* at 7; *see also id.* at 84, 86, 89. Petitioner concludes that Ray Brook "is [not] offering the petitioner required and needed medical health treatment care [and] is not capable of stopping COVID-19 outbreaks . . . [thus] petitioner has to continually worry if [he] . . . will receive any type of medical care at FCI Ray Brook[.]" *Id.* In sum, return to Fort Dix "would alleviate FCI Ray Brook's failure to provide the petitioner proficient needed health care treatment and reduce the cost to the Department of Justice BOP to hire outside physicians when FCI Fort Dix has the type of inhouse specialist to offer the petitioner his needed care." *Id.* at 8.

**IV.  DISCUSSION**

The only issue before the Court is whether petitioner is entitled to be transferred from Ray Brook to Fort Dix as relief for his federal habeas corpus action.

The Supreme Court has held that the Constitution does not "guarantee that [a] convicted prisoner will be placed in any particular prison . . . [and t]he initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Furthermore "the Due Process Clause [does not] . . . protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Id.* at 225. This remains true even where "life in one prison is much more disagreeable than in another," as there is no "Fourteenth Amendment liberty interest . . . implicated when a prisoner is transferred to [an] institution with . . . more severe rules." *Id.* In sum, "[w]hatever expectation [a] prisoner may have in remaining at a particular prison so long as he behaves himself . . . is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer [the prisoner] for whatever reason or for no reason at all." *Id.* at 228. This is

5

consistent with the long-standing policy that "[t]he federal courts do not sit to supervise state prisons, the administration of which is [an] acute interest to the States." *Id.* at 229 (citations omitted).

This rule holds "true whether the inmate is transferred within the same correction system to correctional facilities in another state, to privately run correctional facilities, or from state to federal facilities." *Green v. New York State Dept. of Corr. Services*, No. 9:99-CV-0175 (LEK/GLS), 2003 WL 22169779, at *4 (N.D.N.Y. Aug. 27, 2003); *accord Cofone v. Manson*, 594 F.2d 934, 938 n.4 (2d Cir. 1979) ("The discretion of prison officials recognized by the [Supreme] Court would seem sufficiently broad to cover interstate as well as intrastate transfer."). In sum, because "Congress has granted exclusive authority to the Attorney General (and the Bureau of Prisons) to designate the place of confinement for federal prisoners . . . The Bureau of Prisons . . . has sole discretion to determine the facility in which a federal prisoner should be placed [and that] . . . discretion . . . is virtually unfettered." *Sash v. Laird*, No. 1:06-CV-6052, 2008 WL 2816019, at *1 (E.D.N.Y. July 21, 2008) (internal quotation marks and citations omitted); *accord Fournier v. Zichefoose*, 620 F. Supp. 2d 313, 317 (D. Conn. 2009) ("Once an individual has been committed, the BOP has discretionary authority both in determining the individual's initial placement and in directing the transfer of the prisoner from one penal or correctional facility to another.").

Here, the answer to petitioner's request for a transfer is clear. "[P]etitioner does not have a right to be relocated and petitioner's confinement to any particular facility is within the sole discretion of the BOP." *Sash*, 2008 WL 2816019, at *1. Accordingly, the Court cannot compel his transfer to Fort Dix.

Further, "[i]t is well-settled that Congress has given federal prison officials 'full-

6

discretion' to control 'prisoner classification.'" *Collins v. Schult*, No. 9:08-CV-1230 (TJM), 2010 WL 411055, at *4 (N.D.N.Y. Jan. 27, 2010) (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)); *accord Fournier*, 620 F. Supp. 2d at 317 ("The general rule is that the Fifth Amendment's Due Process Clause does not confer any right upon an inmate to any particular custody or security classification.") (citations omitted). Accordingly, "[t]he Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections," because of that discretion. *Torres v. Stewart*, 263 F. Supp. 2d 463, 469 (D. Conn. 2003) (citing *Moody*, 429 U.S. at 88 n.9).[1]

As a result, absent a showing that the challenged confinement

---

[1] To the extent petitioner argues that he belongs in a lower security level facility – specifically Fort Dix – because the BOP relied on erroneous disciplinary information to move him to a higher security classification level and facility – specifically Ray Brook – such arguments have been found unpersuasive in other federal jurisdictions. *See Dusch v. Rivera*, 2:15-CV-0079, 2016 WL 1698294, at *2 (E.D. Ark. Apr. 27, 2016) (citing cases from the Fifth and Sixth Circuit, as well as the Eastern District of Kentucky). Based upon *Moody* and its progeny, the Arkansas District Court held "that even prisoner classifications based on incorrect or erroneous information do not violate due process because an inmate does not have a protected liberty interest in any particular classification." *Id.* The Court finds this logic sound.

In combination with the BOP's virtually unfettered discretion to transfer an inmate for any reason, or none at all, *Meachum*, 427 U.S.at 229, it does not appear that the petitioner's slightly increased security classification – whether based on incorrect information or not – and its potential impact on his ability to be transferred creates a claim for which federal habeas corpus relief can be granted. *But see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding an atypical and significant hardship creating a liberty interest prior to transfer to a supermax facility where "almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small room," and review of the placement is done annually and transfer disqualifies the inmate from parole).

That being said, the BOP has considered what actions are prohibited based on a procedurally deficient disciplinary hearing. *See* UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF PRISONS, INMATE DISCIPLINE PROGRAM (2011) *available at* https://www.bop.gov/policy/progstat/5270_009.pdf (last visited 04/14/22) ("PROGRAM STATEMENT").

> References to significant prohibited acts that are not supported by disciplinary actions and hearings may not be used by the Bureau in ways that have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time, good conduct time, or a parole recommendation. Staff *may* maintain such references in an inmate's central file for use in making classification, administrative transfer, and other decisions . . . .

PROGRAM STATEMENT at 34. Under this provision, petitioner is entitled to the return of his GTCs, which the BOP has already done. However, petitioner is not entitled to any relief based upon custody level as, even if his hearing was later deemed deficient, the BOP still retained discretion – from the Program Statement, as evidenced by the word "may", and the case law cited above – concerning decisions regarding transfer.

7

> imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or that the BOP's action "will inevitably affect the duration of his sentence," prisoners like Petitioner do not have a constitutionally protected liberty interest under the Federal Constitution in prisoner classifications in the federal prison system.

*Collins*, 2010 WL 411055, at *4 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

> In making this evaluation, a court should proceed objectively, taking into account the duration of the prisoner's sentence, the conditions to which the prisoner is subjected, and the extent to which the alleged loss of liberty portends a departure from the circumstances faced by other "inmates in the general population."

*Quartararo v. Catterson*, 917 F. Supp. 919, 936-37 (E.D.N.Y. 1996) (quoting *Sandin*, 515 U.S. at 486) (explaining the *Sandin* analysis).

Here, petitioner has not made a showing that his classification in a medium security facility – Ray Brook – resulted in a significant hardship in the ordinary incidents of prison life or that it would affect the duration of petitioner's confinement.  "If . . . the prisoner can lawfully be held in the facility into which he has been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive or less desirable facility." *Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *6 (N.D.N.Y. Nov. 9, 2012) (internal quotation marks and citations omitted).  Because BOP officials had the discretion to transfer petitioner from one BOP facility to another, he cannot object to the transfer even if the conditions in Ray Brook were less favorable than those in Fort Dix.

Petitioner cites to several instances why transfer is warranted.  The first is his ability to enroll in rehabilitative programs at Fort Dix that are presumably not offered at Ray Brook.  These include drug treatment, academic courses, and work programs.  However, none of these constitute protected liberty interests protected by the Constitution.

8

The BOP has full discretion over placement of an inmate in a rehabilitative program. *See Moody*, 429 U.S. at 88 n.9 ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system] . . . and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Levin v. Apker*, 455 F.3d 71, 83 (2d Cir. 2006) ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility."); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) ("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); *Bagarozy v. Wiley*, No. 9:98-CV-1845 (FJS/GLS), 1999 WL 33504439, at *3 n. 7 (N.D.N.Y. Oct. 26, 1999) ("The Bureau of Prisons has full discretion for determining which inmates enter the drug treatment program . . . Prisoners have no statutory or constitutional entitlement sufficient to invoke due process for . . . eligibility for rehabilitative programs in the federal system."). Therefore, petitioner has no constitutional right to a particular placement in any drug or educational programs. Accordingly, his argument that he would better flourish at Fort Dix, while potentially true, is insufficient to entitle him to federal habeas relief.

The same holds true for prison employment. *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (joining other circuits in holding "that there is no property interest in a federal prisoner's UNICOR job assignment," therefore a federal inmate, like a state inmate, "has no protected liberty interest in a particular job assignment.") (citing *James v. Quinlan*, 866 F.2d 627, 629-630 (3rd Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 484-86 (7th Cir. 1982)). Therefore, petitioner does not have a constitutional right to employment at prison, so that

cannot serve as a reason to compel his transfer to Fort Dix.

Petitioner's second reason supporting transfer is because it would provide him with the medical treatment that he requires. First it is important to note that a review of the medical records indicates that petitioner's hand injury occurred in 1999, the surgery is not classified as an emergency intervention, and he has been receiving medical attention for that injury. *See* Dkt. No. 22 at 91-97 (medical treatment notes). Petitioner provided grievance forms for his other medical ailments, as previously noted, which were also responded to by medical personnel. Accordingly, petitioner is receiving medical care. Perhaps it is not as expedient as he would prefer, but petitioner has provided no proof that this is inconsistent with the care being provided to other similarly situated inmates at Ray Brook. Accordingly, because medical care is being provided, even though it is in a fashion inconsistent with petitioner's preferences, the situation is neither atypical nor significant under *Sandin*. Further, consistent with the Court's prior reasoning, petitioner does not have the ability to compel transfer to a facility with different rehabilitative programs or less restrictive conditions just because they better appeal to his liking or may more favorably treat his ailments. Placement decisions and transfers are at the BOP's discretion.

Petitioner's final reason to compel transfer is because Fort Dix is closer to his family, which would presumably help facilitate more frequent and consistent visitation. However, the Supreme Court has already explained that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, [and] . . . no justifiable expectation that he will be incarcerated in any particular State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Within this circuit, the reasoning that an inmate "has no constitutional right to remain at a particular prison" has been used to also conclude "that an inmate's spouse . . . does not

have a constitutional right to have her inmate husband remain in a facility close to her residence." *Jackson v. Johnson*, 15 F. Supp. 2d 341, 366-67 (S.D.N.Y. 1998) (citing cases). This Court finds this reasoning compelling and also applicable to petitioner's instant claim. As petitioner has no expectation of being incarcerated in any particular location, there is also no duty to transfer petitioner so that he is closer to his spouse or loved ones.[2]

In sum, petitioner is not entitled to be transferred back to Fort Dix. That decision lies within the purview of the BOP, regardless of the expungement of his disciplinary record. Moreover, petitioner has failed to demonstrate that his continued incarceration at Ray Brook constitutes an atypical hardship under *Sandin*.

## V. CONCLUSION

**WHEREFORE**, it is

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED AND DISMISSED**; and it is further

**RECOMMENDED** that, given the outcome of the habeas petition, petitioner's motion for judgment on the pleadings, Dkt. No. 19, be **DENIED AS MOOT**; and it is further

**RECOMMENDED** that, because the petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for petitioner to appeal the denial of his petition.

---

[2] "[A] provision in the First Step Act [of 2018] requires the BOP to place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence." *United States v. Quashi*, No. 14-CR-0376, 2019 WL 7194211, at *2 (E.D.N.Y. Dec. 26, 2019). (internal quotation marks and citations omitted) However, that "requirement is tempered by a myriad of other considerations . . . [and m]ore importantly, a designation of a place of imprisonment under this subsection is not reviewable by any court." *Id.* (internal quotation marks and citations omitted).

Here, any attempt to assert a right to transfer pursuant to federal statute would also be unpersuasive. First, the First Step Act still provides BOP officials with discretion and does not create an obligation by the plain language of the statute. Second, the BOP complied with the provisions as "Petitioner's home address is in Reading, Pennsylvania [and] . . . Ray Brook is approximately 400 miles from Reading." Dkt. No. 21 at 11 n.3. Third, even if the BOP had not, the Court has no authority to examine that decision.

11

*See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions).  However, to the extent one is required, the Court recommends that no certificate of appealability be issued because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); and it is further

**RECOMMENDED** that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).[3]

DATED: April 18, 2022

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).